Timothy **BORIS, Bonnie Cooper, Tony F. Girard, and Erika Newsome, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**WAL–MART STORES, INC. and Walmart.Com, Defendants.**

**No. CV 13–7090 ABC (FFMx).**

United States District Court, C.D. California, Western Division.

Signed April 9, 2014.

Benjamin J. Sweet, Edwin J. Kilpela, Jr., Del Sole Cavanaugh Stroyd LLC, Pittsburgh, PA, Jennifer M. Miller, Jonathan D. Miller, Nye Peabody Stirling Hale and Miller LLP, Santa Barbara, CA, Brian D. Penny, Goldman Scarlato Karon & Penny PC, Wayne, PA, Lester L. Levy, Matthew I. Insley—Pruitt, Michele F. Raphael, Wolf Popper LLP, New York, NY, for Plaintiffs.

Frank C. Rothrock, Paul B. La Scala, Shook Hardy & Bacon LLP, Irvine, CA, for Defendants.

## ORDER *GRANTING* MOTION TO DISMISS

AUDREY B. COLLINS, District Judge.

Pending before the Court is Defendant Wal–Mart Stores, Inc., and Wal–Mart. com's ("Wal–Mart") Motion to Dismiss ("Motion," docket no. 25), filed on January 24, 2014. Plaintiffs Timothy Boris, Bonnie Cooper, Tony F. Girard, and Erika Newsome ("Plaintiffs") filed an Opposition and Wal–Mart filed a Reply. The Court heard oral argument on April 7, 2014. For the following reasons, the Court *GRANTS* the Motion.

## I. BACKGROUND

In this putative class action lawsuit, plaintiffs Timothy Boris, Bonnie Cooper, Tony F. Girard, and Erika Newsome allege that Wal–Mart deceptively markets its Equate Migraine medication in violation of several laws. Plaintiffs contend that Equate Migraine and Equate Extra Strength Headache Relief ("Equate ES")—both over-the-counter medications—contain the exact same active ingredients in the same amounts, yet Wal–Mart charges two to three times more for Equate Migraine than it does for Equate ES, and Equate Migraine's package has a red background while Equate ES's package has a green background. First Amended Complaint ("FAC," docket no. 18) ¶ 2. Plaintiffs contend that Equate Migraine's price differential along with its package's red background "deceived [consumers] into thinking that Equate Migraine was better (stronger, more effective) for treating headaches (both migraine and non-migraine)" than Equate ES. *Id.* Plaintiffs also contend that Wal–Mart further misleads consumers into thinking Equate Migraine is more effective than Equate ES because Wal–Mart's website lists all three active ingredients for Equate Migraine, but lists only one active ingredient for Equate ES. *Id.* ¶ 13.

Based on the foregoing allegations, Plaintiffs assert the following claims: (1) false advertising in violation of California's False Advertising Law ("FAL," Cal. Bus. & Prof.Code § 17500 *et seq.*); (2) unfair and unlawful conduct in violation of California's Unfair Competition Law ("UCL," Cal. Bus. & Prof.Code § 17200 *et seq.*); (3) for violation of the California Consumer

Legal Remedies Act ("CLRA," Cal. Civ. Code § 1750 *et seq.*); (4) violation of the New Jersey Consumer Fraud Act ("NJCFA," N.J.S.A. 56:8–1 *et seq.*); (5) violation of New York General Business Law ("NYGBL," New York General Business Law § 349); (6) unjust enrichment/restitution; and (7) breach of the covenant of good faith and fair dealing. All of Plaintiffs' claims are based on the same conduct, except the NJCFA, NYGBL, and unjust enrichment/restitution claims do not incorporate the website allegation.

Plaintiffs assert these claims on behalf of members of the following class and subclasses who purchased Equate Migraine during the limitations period: a nationwide Class represented by all four representative Plaintiffs (FAC ¶ 33); a California State Subclass represented by California resident Boris (FAC ¶ 34); a New Jersey Sate Subclass represented by New Jersey resident Cooper (FAC ¶ 35); a New York State Subclass represented by New York resident Newsome (FAC ¶ 37); and an Online Purchaser Subclass represented by Pennsylvania resident Girard (FAC ¶ 36), the only Plaintiff who alleges that he purchased Equate Migraine through Wal–Mart's website.

Wal–Mart moves to dismiss all of these claims on several grounds, including for failure to state a claim, for failure to satisfy Fed. R. Civ. Proc. 9(b), as preempted by federal law, and as subject to the Food and Drug Administration's ("FDA") primary jurisdiction. Because the Court finds that Plaintiffs have simply failed to state any claim, it need not reach all of Wal–Mart's other arguments.

## II. LEGAL STANDARD

Fed. R. Civ. Proc. 8(a)(2) ("Rule 8(a)") requires a pleading to present a "short and plain statement of the claim showing that the pleader is entitled to relief." Under Fed. R. Civ. Proc. 12(b)(6) ("Rule 12(b)(6)"), a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted." Thus, a pleading that does not satisfy Rule 8(a) is subject to dismissal under Rule 12(b)(6). Dismissal is proper under Rule 12(b)(6) where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988).

"[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal quotations and alterations omitted). Although this does not require "detailed factual allegations," it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A sufficiently-pled claim must be "plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* For purposes of a motion to dismiss, allegations of fact are taken as true and are construed in the light most favorable to the nonmoving party. *See Newdow v. Lefevre*, 598 F.3d 638, 642 (9th Cir.2010).

The first step in determining whether a claim is sufficiently pled is to identify the elements of that claim. *See Iqbal*, 556 U.S. at 675, 129 S.Ct. 1937. The court should then distinguish between the pleading's allegations of fact and its legal conclusions: a court "must take all of the factual allegations in the complaint as true," but should not give legal conclusions this assumption of veracity. *Id.* at 678,

129 S.Ct. 1937. The court must then decide whether the pleading's factual allegations, when assumed true, "plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S.Ct. 1937. The court may not consider material beyond the pleadings other than judicially noticeable documents, documents attached to the complaint or to which the complaint refers extensively, or documents that form the basis of the claims. *See United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir.2003).

### III. DISCUSSION

#### A. Overview and Summary of Order

Plaintiffs do not claim that the packaging for Equate Migraine and Equate ES contained any affirmative misrepresentations (Opp'n 4:4–8), omitted necessary information (Opp'n 11, fn. 8), or failed to comply with FDA labeling requirements (Opp'n 16:18–20). Rather, the gravamen of Plaintiffs' case is that by charging more for Equate Migraine and using the color red on its packaging, Wal–Mart deceived Plaintiffs into believing Equate Migraine was more effective than the lower-priced, green-packaged Equate ES when, in fact, both medications contain the same active ingredients in the same doses and are therefore pharmacologically identical. *See* Opp'n 4:11–14 (stating that the price differential and packaging color are the gravamen of the case). Plaintiffs assert that no reasonable consumer would pay more than $9 for Equate Migraine when he or she could pay less than $3 for Equate ES unless he or she believed Equate Migraine was more effective than Equate ES. *See* Opp'n 1:2–5.

There is a *res ipso loquitur* quality to Plaintiffs' claims: the fact that Plaintiffs paid more than three times more for Equate Migraine speaks for itself, which is

to say, demonstrates that Plaintiffs believed Equate Migraine was more effective than Equate ES. However, a consumer's assumptions about a product are not the benchmark for establishing liability under any of the consumer protection statutes Plaintiffs rely on; rather, all of these statutes require some act, statement, or omission by the defendant.[1] Equate Migraine's price and packaging color do not constitute an act or statement on which to premise liability.

Plaintiffs' allegation that Wal–Mart's website contained a misleading omission is pled only as a tagalong allegation reinforcing the deceptiveness of Equate Migraine's price and red package, and not as a standalone basis for Plaintiffs' claims. The Court will address the pricing and package color aspects of Plaintiffs' claims first, and reach the tagalong website allegation separately. For the reasons summarized above and explained at length below, Plaintiffs' claims are dismissed in their entirety, with limited leave to amend.

#### B. All of Plaintiffs' Deception Claims Based on Equate Migraine's Price and Red Packaging Fail and are *DISMISSED with Prejudice.*

1. **Plaintiffs' Claims under the FAL, CLRA, and the UCL's "Unlawful" Prong Based on Equate Migraine's Price and Red Packaging Fail for Lack of a Statement or Representation.**

Plaintiff's FAL and CLRA claims are premised on the same allegations: that Equate Migraine's price and red packaging deceived them into believing that it was more effective than the cheaper, green-packaged Equate ES, and that this deception was reinforced by an omission on Wal–Mart's website. Plaintiffs' claim

---

1. Such statutes also tend to require the plaintiff's expectations to be reasonable, an issue

that the Court does not reach.

under the UCL's "unlawful" prong is premised on the FAL violation. *See* FAC ¶ 57.

California's FAL provides in relevant part: "It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property . . . to make or disseminate or cause to be made or disseminated before the public in this state . . . in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property . . . or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . ." Cal. Bus. & Prof.Code § 17500. Section 17500 has been broadly construed to proscribe "not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Kasky v. Nike, Inc.,* 27 Cal.4th 939, 951, 119 Cal.Rptr.2d 296, 45 P.3d 243 (2002).

The CLRA proscribes certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer," including "[u]sing deceptive representations . . . in connection with goods or services." Cal. Civ.Code § 1770(a)(4). The CLRA is also to be "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ.Code § 1760.

▮ The same standard determines whether a representation is misleading under the FAL and the CLRA. *Consumer Advocates v. Echostar Satellite Corp.,* 113 Cal.App.4th 1351, 1360, 8 Cal.Rptr.3d 22 (2003). Whether a statement is misleading is "judged by the effect it would have on a reasonable consumer." *Id.* Stated similarly, a "statement [that is] false or likely to be misleading to a reasonable consumer" violates these statutes. *Nagel v. Twin Laboratories, Inc.,* 109 Cal.App.4th 39, 53, 134 Cal.Rptr.2d 420 (2003). "[T]he primary evidence in a false advertising case [of whether a statement is misleading under the statute] is the advertising itself." *Brockey v. Moore,* 107 Cal.App.4th 86, 100, 131 Cal.Rptr.2d 746 (2003). "The misleading character of a given representation appears on applying its words to the facts." *Colgan v. Leatherman Tool Grp., Inc.,* 135 Cal.App.4th 663, 679, 38 Cal. Rptr.3d 36 (2006) (quotations and citations omitted).

All of these cases reflect that false advertising violations must be premised on some statement or representation by the defendant about the product. Although Plaintiffs point out that courts (in California, New York, and New Jersey) have found even literally true statements to be deceptive, *see* Opp'n, 3:10–24, Plaintiffs' own characterization of the law reflects that liability must be premised on a statement or representation of some kind. Indeed, all of the cases Plaintiffs cite involve some kind of statement or representation by the defendant about the offending product.

▮ Here, neither the price of Equate Migraine nor the red background of its packaging constitutes a representation or statement about the product: the price is simply the amount at which the merchant offers to sell the product, and the color of the packaging is a color, not a statement

about the product.[2] Insofar as the color red on a product's package communicates anything, its message is necessarily subjective and speculative. A merchant's liability cannot be premised solely on a consumer's assumptions about a product based on a product's price and the color of its packaging. Notably, Plaintiffs do not allege that Equate Migraine's packaging failed to accurately state the correct active ingredients and their dosages, or deny that by simply comparing Equate Migraine's packaging to Equate ES's packaging they could have readily ascertained that these drugs were identical. Thus, Equate Migraine's price and red packaging cannot support Plaintiffs' FAL, CLRA, or UCL "unlawful" prong claims, when considered either by themselves or in conjunction with the accurate active ingredient labeling on both drugs' packaging. The Court therefore **GRANTS** Wal–Mart's Motion to Dismiss these claims.

2. **Plaintiffs' Claim Under the UCL's "Unfair" Prong Based on Equate Migraine's Price and Red Packaging Fail Because they Are Not Tethered to Any Specific Constitutional, Statutory, or Regulatory Provision.**

Plaintiffs also contend that Wal–Mart violated the "unfair" prong of the UCL because Wal–Mart's "misrepresentations and omissions" (FAC ¶ 59) "offend[ ] established public policy or [are] immoral, unethical, oppressive, unscrupulous, unconscionable, or substantially injurious to Plaintiffs..." FAC ¶ 58. Plaintiffs' Opposition admits that their claims are not, in fact, premised on any omissions. *See* Opp'n 11, fn. 8. Insofar as this claim is premised on "misrepresentations" embodied in Equate Migraine's price or its red packaging, it fails because, as stated above, neither aspect of the product constitutes a representation.

Insofar as Plaintiffs' unfairness claim may be characterized as based on Wal–Mart's conduct—the "conduct" of pricing Equate Migraine and using red packaging—it also fails.

The unfair prong of the UCL prohibits "unfair ... business act[s] or practice[s]." Cal. Bus. & Prof.Code § 17200. The statute does not define the term "unfair," so articulating its parameters is a task that has fallen to the courts.

In *Cel–Tech v. Los Angeles Cellular*, the California Supreme Court rejected as "too amorphous and [as] provid[ing] too little guidance to courts and businesses" the very standards for "unfair" that Plaintiffs

**2.** At oral argument, Plaintiffs directed the Court to two cases that they claimed support the proposition that a product's price or color can be an actionable statement. The Court has reviewed both cases and they are not on point. In *Wal–Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000), a Lanham Act case, the Supreme Court held that a product's design, like its color, cannot be inherently distinctive and can only be protected as trade dress if it has acquired secondary meaning. *Wal–Mart* has no bearing on the consumer false advertising claims in issue here. In *Miller v. Ghirardelli Chocolate Co.*, 2013 WL 1402682 (N.D.Cal. Apr. 5, 2013), the Court found that the plaintiff stated CRLA, FAL, UCL, and fraud claims against Ghirardelli for misleading consumers into believing that its "Ghirardelli Chocolate's Premium Baking Chips–Classic White" ("baking chips") were white chocolate, when in fact the baking chips did not contain any chocolate ingredients in violation of the FDA's "white chocolate standard," parallel California regulations, and FDA and California label requirements. Because the claims in *Miller* were premised on an actual statement on the product's package—the word "chocolate"—it is not analogous to this case. In addition, price did not play a role in the *Miller* court's analysis. In short, neither *Wal–Mart* nor *Miller* aid Plaintiffs.

incorporate into their FAC and rely upon in their Opposition. *See Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 185, 83 Cal. Rptr.2d 548, 973 P.2d 527 (1999) (*"Cel–Tech"*) (rejecting the exact standard Plaintiffs cites in FAC ¶ 58, and the cost-benefit analysis that Plaintiffs invoke at Opp'n 13:5–18). Instead, the Court held that "any finding of unfairness to competitors under section 17200 [must] be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Id.* at 187, 83 Cal.Rptr.2d 548, 973 P.2d 527. Notably, *Cel–Tech* concerned unfairness claims between *competitors*, and the Court expressly stated that its discussion did not relate to *consumer* actions. *See id.* at 187, fn. 12, 83 Cal. Rptr.2d 548, 973 P.2d 527.

However, the amorphous tests *Cel–Tech* rejected were from consumer cases, and many California appellate courts have adapted *Cel–Tech's* reasoning to consumer actions. This makes sense, because *Cel–Tech's* rationale for tethering competitor unfairness claims to specific statutory or regulatory provisions also applies to consumer unfairness claims: "[a]n undefined standard of what is 'unfair' fails to give businesses adequate guidelines as to what conduct may be challenged and thus enjoined and may sanction arbitrary or unpredictable decisions about what is fair or unfair," *id.* at 185, 83 Cal.Rptr.2d 548, 973 P.2d 527, regardless of whether the unfairness claim is asserted by a competitor or by a consumer.

■ In *Durell v. Sharp Healthcare*, 183 Cal.App.4th 1350, 108 Cal.Rptr.3d 682 (2010), the Court persuasively adapted *Cel–Tech* to consumer unfairness suits. Citing its own previous cases, the Court found that *Cel–Tech* "may signal a nar-

rower interpretation of the prohibition of unfair acts or practices *in all unfair competition actions* and provides reason for caution in relying on the broad language in earlier decisions that the court found to be 'too amorphous.' " *Durell,* 183 Cal.App.4th at 1365, 108 Cal.Rptr.3d 682 (citing *Gregory v. Albertson's, Inc.,* 104 Cal.App.4th 845, 854, 128 Cal.Rptr.2d 389 (2002) (emphasis added)). As such, for unfairness cases predicated on public policy, "*Cel–Tech* [ ] require[s] that the public policy which is a predicate to the action must be 'tethered' to specific constitutional, statutory or regulatory provisions." *Durell,* 183 Cal.App.4th at 1366, 108 Cal.Rptr.3d 682. Alternatively, "[t]o show a business practice is unfair, the plaintiff must show the conduct 'threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.' " *Id.* (quoting *Byars v. SCME Mortgage Bankers, Inc.,* 109 Cal.App.4th 1134, 1147, 135 Cal. Rptr.2d 796 (2003)). The Court believes that the California Supreme Court is likely to accept this approach because it maintains the UCL's purpose of deterring and remedying unfair business conduct yet avoids exposing business to arbitrary or unpredictable liability—values the Court itself balanced in *Cel–Tech.* As such, the Court will apply this approach here.

■ Plaintiffs have not pointed to any specific constitutional, statutory, or regulatory provision that embodies a policy that Equate Migraine's price and red packaging violate. And the Court is aware of none. Absent some legislative enactment, price setting is ordinarily left to the business judgment of merchants.[3] Taken to

---

**3.** Wal–Mart attempts to justify the price dif-   ference between Equate Migraine and Equate

its logical conclusion, Plaintiffs' claim requires the judiciary to make pricing decisions, such as ruling that pharmacologically identical drugs must be the same price or may have only a limited price differential, or imposing liability for differential pricing on a necessarily unpredictable case-by-case basis.

To state this result is to demonstrate that it is untenable: price regulation is a political question beyond the judiciary's authority. A question is a political question and therefore nonjusticiable when, for example, there is "a lack of judicially discoverable and manageable standards for resolving it [ ] or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion ..." *Baker v. Carr*, 369 U.S. 186, 217, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). California courts have consistently described price regulation as "a question of economic policy ... It is the Legislature's function, not ours, to determine the wisdom of economic policy. Judicial intervention in such economic issues is improper." *Lazar v. Hertz Corp.*, 69 Cal.App.4th 1494, 1509, 82 Cal. Rptr.2d 368 (1999) (a law allowing car rental companies to impose a surcharge for underage drivers and imposing a "reasonableness" requirement on the age threshold, does not also impose a "reasonableness" limit on the surcharge, so claims challenging reasonableness of surcharge are not viable); *see also Princess Cruise Lines, Ltd. v. Superior Court*, 179 Cal. App.4th 36, 46, 101 Cal.Rptr.3d 323 (2009) ("... in the absence of legislatively crafted standards, it is not for us to lay down economic policy that passes on the reasonableness of charges."). Thus, to the extent the state regulates prices, it does so through the legislature and not through

the courts because price regulation is a quintessentially political question and thus nonjusticiable. The "fairness" of a product's packaging color is, on its face, similarly non-justiciable.

In the absence of any provision that even remotely supports Plaintiffs' price and packaging color argument, there is no predicate for adjudicating the alleged "unfairness" of Equate Migraine's price or the propriety of its red packaging. As noted, the Court is without authority to create, in effect, *ad hoc* pricing regulations or arbitrary package color rules. As such, Plaintiffs' claim that Equate Migraine's price and red packaging amount to an unfair business practice under the "unfair" prong of the UCL fails. The Court therefore **GRANTS** Wal–Mart's Motion to Dismiss this claim.

### 3. Plaintiffs' Claims Under the NJCFA and NYGBL Based on Equate Migraine's Price and Red Packaging Also Fail.

██ The NJFCA prohibits, in relevant part, "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, [sic] concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise." N.J. Stat. Ann. 56:8–2. To prevail on a cause of action for consumer fraud, a plaintiff must demonstrate an "ascertainable loss." *Scibek v. Longette*, 339 N.J.Super. 72, 78, 770 A.2d 1242 (App.Div. 2001). An unlawful practice typically in-

---

ES as related to different FDA approval processes applicable to each medication. Procedurally, matters beyond the pleadings generally cannot be considered when deciding a

motion to dismiss. Substantively, as discussed herein, the Court is aware of no law requiring Wal–Mart to justify this price difference in the first place.

volves an affirmative act of fraud and can arise from an affirmative act, an omission, or a violation of an administrative regulation. *Id.* at 78, 770 A.2d 1242.

■■■ The NYGBL states, in relevant part, "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y. Gen. Bus. Law § 349(a). A § 349 claim consists of three elements: "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Stutman v. Chem. Bank,* 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892, 731 N.E.2d 608 (2000). "Whether a representation or omission is a 'deceptive act or practice' depends on the likelihood that it will 'mislead a reasonable consumer acting reasonably under the circumstances.'" *Gomez–Jimenez v. New York Law Sch.,* 103 A.D.3d 13, 956 N.Y.S.2d 54, 58 (2012). "[A] party does not violate GBL 349 by simply publishing truthful information and allowing consumers to make their own assumptions about the nature of the information." *Id.* at 59.

■■■ Although acts, practices, statements, or omissions may be actionable under both the NJCFA and the NYGBL, none of the ten cases Plaintiffs cite suggest that either state views a product's price or package color as an act, practice, statement, or omission. The cases Plaintiffs cite involve misstatements or omissions (eight cases), or were dismissed (two cases). *See* Reply 12:10–14:7 (characterizing Plaintiffs' New Jersey and New York cases). As discussed above, neither Equate Migraine's price nor its red packaging constitutes a statement or omission. Plaintiffs have presented no authority supporting the implausible premise that a product's price and package color is a suf-

ficient basis for liability under the NJCFA or the NYGBL. As such, the Court **GRANTS** the Motion as to Plaintiffs' NJCFA and NYGBL claims.

For the foregoing reasons, Plaintiff's FAL, CLRA, and UCL claims based on Equate Migraine's price and red packaging, and their NJCFA and NYGBL claims, fail. Because amendment cannot cure the defects noted above, these claims are **DISMISSED WITH PREJUDICE.**

**C. Insofar as Plaintiffs' FAL, CLRA, and UCL Claims are Premised in Part on their Website Allegation, they are *DISMISSED with Leave to Amend.***

**1. The FAC Does Not Plead the Alleged Misrepresentation on the Website as an Independent Basis for Plaintiffs' FAL, CLRA, and UCL Claims.**

■■■ Plaintiffs' FAC does allege a misrepresentation or omission: that Wal–Mart's website misstated the active ingredients of Equate ES. *See* FAC ¶ 23 ("With regard to the online marketing of Equate Migraine, Defendants' website falsely lists Equate ES as having only one active ingredient, acetaminophen 250 mg, while listing three active ingredients for Equate Migraine (acetaminophen 250 mg, ***plus*** aspirin 250mg, and caffeine 65 mg)."). However, while Plaintiffs' FAL, CLRA, and UCL claims incorporate this allegation, a fair reading of the FAC reveals that Plaintiffs rely on this allegation not as an independent basis for their claims, but to bolster their claims that Equate Migraine's higher price and red packaging are misleading. *See, e.g.,* FAC ¶ 22 ("Defendant's deception is reinforced by the manner in which Wal–Mart displays Equate ES and Equate Migraine side-by-side on its shelves and in close proximity on the Wal-

mart.com web site [sic].”); *see also* Opp'n 4:10–13 (“The gravamen of Plaintiffs' allegations is that the use of color and pricing creates a false and misleading perception among consumers that Equate Migraine is substantially more potent and effective than equate ES.”). As discussed above, the Court finds that Equate Migraine's higher price and red packaging are not actionable. Given the state of the FAC, the Court cannot find that Plaintiffs' allegation about the website, standing alone, supports Plaintiffs' claims because the FAC does not base its claims on that allegation standing alone. In addition, Plaintiffs have disavowed any claim based on FDA labeling requirements. *See* Opp'n 16:18–20. The Court therefore **GRANTS** the Motion as to the website components of Plaintiffs' FAL, CLRA, and UCL claims. If Plaintiffs wish to pursue their FAL, CLRA, and UCL claims based on alleged misrepresentations on Wal–Mart's website, they may attempt to replead them.

### 2. Plaintiff Girard's Website Allegations Do Not Comply with Rule 9(b).[4]

■ Fed. R. Civ. Proc. 9(b) (“Rule 9(b)”) requires a party to “state with particularity the circumstances constituting fraud or mistake.” “Rule 9(b) demands that the circumstances constituting the alleged fraud ‘be specific enough to give defendants notice of the particular misconduct … so that they can defend against the charge and not just deny that they have done anything wrong.’ ” *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir.2009) (citations omitted). Thus, “averments of fraud must be accompanied by ‘the who, what, when, where, and how’ of

the misconduct charged.’ ” *Id.* (citations omitted). *See also Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir.1991) (to satisfy Rule 9(b), a plaintiff alleging fraud must “detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme”).

■ Rule 9(b) applies to claims under California's consumer protection statutes when such claims are “grounded in fraud” or “sound in fraud.” *Kearns*, 567 F.3d at 1125–26 (CLRA and UCL claims that Ford conspired with dealerships to misrepresent the benefits of its certified pre-owned vehicle program in order to sell more cars and increase revenue sound in fraud and are subject to Rule 9(b)).

■ Here, Plaintiffs allege that Wal–Mart's alleged misrepresentation on its website was part of its fraudulent scheme to deceive consumers into purchasing the more expensive Equate Migraine product rather than the cheaper but pharmacologically equivalent Equate ES. Plaintiffs even use the word “fraud” to characterize Wal–Mart's conduct. *See, e.g.,* FAC ¶ 51. Therefore, Plaintiffs' claims sound in fraud and are subject to Rule 9(b).

The FAC's website allegations do not satisfy Rule 9(b). Plaintiff Girard—the only representative plaintiff associated with any website-related allegation and the sole representative of the Online Purchaser Class—does not specify when he viewed Wal–Mart's website or when he relied on it in deciding to buy Equate Migraine. *See* FAC ¶ 13 (allegations pertaining to Girard). Wal–Mart contends that because the content of its website changes from time to time, it needs to know when Girard viewed the website in order to defend against this

---

4. Because Plaintiffs' claims insofar as they are based on Equate Migraine's price and red packaging are dismissed with prejudice for

failure to state a claim, the Court will not address whether they comply with Rule 9(b).

claim, rather than simply deny any wrongdoing. The Court agrees.

Furthermore, the FAC does not expressly allege that Girard viewed theWalmart.com webpages listing each medicine's active ingredients. *See* FAC ¶ 13. At best, the FAC invites the reader to *infer* Girard viewed these webpages, but this is insufficient to state a claim: absent an express allegation that Girard viewed the misleading content, there can be no reliance and the claim fails under Rules 8(a) and 9(b).

### 3. Plaintiffs' Online Purchaser Class Definition Is Inadequate.

In light of the foregoing rulings, the only claims that may survive if Plaintiffs file an amended complaint are their FAL, CLRA, and UCL claims based on Wal–Mart's alleged misrepresentation on its website. Presumably, these claims are asserted on behalf of the Online Purchaser Class. But the definition of this class is inadequate because it fails to mention Wal–Mart's website in any way, let alone allege that its members purchased Equate Migraine online. Thus, Plaintiffs have failed to state a claim for the Online Purchaser Class.

### D. Plaintiffs' Claim for Breach of the Covenant of Good Faith and Fair Dealing Fails.

The parties agree that the same legal standard applies to Plaintiffs' claim for breach of the covenant of good faith and fair dealing regardless of whether it is brought under California, New Jersey, or New York law. The implied covenant of good faith and fair dealing is read into a contract " 'to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the con-

tract.' " *Racine & Laramie, Ltd. v. Dept. of Parks & Rec.*, 11 Cal.App.4th 1026, 1031–32, 14 Cal.Rptr.2d 335 (1992).

Plaintiffs do not contend that Wal–Mart somehow frustrated their ability to enjoy the benefits of their contract (their purchase of Equate Migraine). Rather, they complain that Wal–Mart charged them too much. Such conduct is not actionable as a breach of the implied covenant. This claim is therefore dismissed with prejudice.

### E. Plaintiffs' Claim for Unjust Enrichment/Restitution Fails.

The Court need not reach the question of whether unjust enrichment is a claim or just a remedy, or whether, as Plaintiffs urge, this whole question is merely semantic. This is because Plaintiffs' claim seeks relief based on the FAC's deception-based claims, all of which have been dismissed. Because there remains no actionable conduct upon which to premise a claim or remedy for unjust enrichment/restitution, this aspect of the FAC is dismissed.

### IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Wal–Mart's Motion to Dismiss as follows:

- Plaintiffs' FAL, CLRA, and UCL claims based on Equate Migraine's price and red packaging, and their NJCFA claim, NYGBL claim, breach of the covenant claim, and unjust enrichment/restitution claim based on the foregoing predicate claims, fail. Because amendment cannot cure the defects in these claims, they are **DISMISSED WITH PREJUDICE**. Because these are the only claims alleged by Boris, Cooper, and Newsome, these Plaintiffs are **DISMISSED**.

- Plaintiffs' FAL, CLRA, and UCL claims based on the alleged website misrepresentation fail as pled and are therefore **DISMISSED.** However, if Plaintiffs can do so consistent with Fed. R. Civ. Proc. 11, they may attempt to cure the deficiencies noted above by filing a Second Amended Complaint within twenty-one (21) days of the issuance of this Order. If Plaintiffs do not timely file a Second Amended Complaint, the action will be deemed dismissed with prejudice.

**IT IS SO ORDERED.**