770 A.2d 1242 (2001)
339 N.J. Super. 72
Thomas SCIBEK, Plaintiff-Respondent,
v.
Salvatore LONGETTE, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued March 14, 2001.
Decided April 5, 2001.
*1244 Eric J. Goldring, Red Bank, argued the cause for appellant (Goldring & Goldring, attorneys; Eric J. Goldring, on the brief).
*1245 The brief of respondent was suppressed.
Before Judges BAIME, CARCHMAN and LINTNER.
*1243 The opinion of the court was delivered by BAIME, P.J.A.D.
This appeal is from the Special Civil Part's judgment awarding plaintiff $3,145 for automobile repairs performed on defendant's cars and high performance engine, and dismissing defendant's counterclaim for violations of the Consumer Fraud Act. We are constrained to reverse the judgment and remand for further proceedings.

I.
Plaintiff owned and operated Classic Motorsports, an automobile repair shop located in Hazlet, New Jersey. Defendant approached plaintiff in January or February 1998 to perform repairs on his 427 cubic inch engine. Over the course of the next six or seven months, plaintiff performed various services on the engine and on defendant's 1968 and 1986 Chevrolet Camaros. Contrary to regulations promulgated under the Consumer Fraud Act, see N.J.A.C. 13:21-21.10; N.J.A.C. 13:21-21.11, plaintiff failed to give defendant a written estimate, and did not obtain a written authorization to complete the repairs. Under N.J.A.C. 13:45A-26C.2, these omissions constituted "deceptive practices in the conduct of the business of an automobile repair dealer."
Plaintiff performed many of the services agreed upon by the parties, but did not complete repairs on the two Camaros. According to plaintiff's testimony, the work on the 1986 Camaro was "ninety-eight percent complete," and the parts needed to finish the repairs were left with the car when he vacated the Hazlet premises.[1] Moreover, while the engine work on the 1968 Camaro was substantially complete, the car was not fully restored by the time plaintiff moved his shop. Defendant paid for the work performed on the engine and for a variety of parts for the two cars, but disputed the amount of the ultimate bill, particularly in regard to labor.
Plaintiff sued for the reasonable value of the services rendered. Defendant counterclaimed for violations of the Consumer Fraud regulations. Following a highly contentious trial, the Special Civil Part awarded a portion of the amount claimed in plaintiff's complaint. The judge dismissed defendant's counterclaim, finding that defendant waived the protection of the Consumer Fraud Act. In reaching this conclusion, the judge emphasized that defendant had owned and operated an automobile repair shop for many years, and obviously knew of, and agreed to disregard, the regulations requiring a dealer to give a customer a written estimate and obtain a written authorization to perform specified repairs. The judge further noted that plaintiff's violation of the regulations did not result in any ascertainable loss to the defendant. Defendant had paid plaintiff $3,500. In his final determination, the judge found that defendant owed an additional $3,145. This appeal followed.

II.
The Consumer Fraud Act was enacted to "protect the consumer against *1246 imposition and loss as a result of fraud and fraudulent practices by persons engaged in the sale of goods and services." Fenwick v. Kay Am. Jeep, Inc., 136 N.J.Super. 114, 117, 344 A.2d 785 (App.Div.), reversed on other grounds, 72 N.J. 372, 371 A.2d 13 (1977); Marascio v. Campanella, 298 N.J.Super. 491, 500, 689 A.2d 852 (App. Div.1997). The purposes of the Act are threefold: (1) to compensate the victim for his or her actual loss, (2) to punish the wrongdoer through the award of treble damages, and (3) to attract competent counsel to counteract the "community scourge" of fraud by providing an incentive for an attorney to take a case involving a minor loss to the individual. Lettenmaier v. Lube Connection, Inc., 162 N.J. 134, 139, 741 A.2d 591 (1999).
The Act is to be applied broadly in light of the statute's remedial purpose. Lemelledo v. Beneficial Management Corp. of Am., 150 N.J. 255, 264, 696 A.2d 546 (1997); Blatterfein v. Larken Associates, 323 N.J.Super. 167, 178, 732 A.2d 555 (App.Div.1999). Moreover, the Act is to be liberally construed in favor of the consumer. Lettenmaier v. Lube Connection, Inc., 162 N.J. at 139, 741 A.2d 591. "The legislative concern was the victimized consumer, not the occasionally victimized seller." Channel Companies, Inc. v. Britton, 167 N.J.Super. 417, 418, 400 A.2d 1221 (App.Div.1979). Nonetheless, "[t]he consumer fraud statute is aimed at promoting truth and fair dealing in the market place." Feinberg v. Red Bank Volvo, Inc., 331 N.J.Super. 506, 512, 752 A.2d 720 (App. Div.2000).
A private party may bring a cause of action for consumer fraud under the Act, and may recover if he demonstrates that he suffered an "ascertainable loss," and that the defendant committed an unlawful practice. N.J.S.A. 56:8-19. An unlawful practice generally involves an affirmative act of fraud or a violation of the administrative regulations promulgated under the Act. See Jiries v. BP Oil, 294 N.J.Super. 225, 229, 682 A.2d 1241 (Law Div.1996). An unlawful practice thus arises under the Act from an affirmative act, an omission, or a violation of an administrative regulation. Strawn v. Canuso, 140 N.J. 43, 60, 657 A.2d 420 (1995); Cox v. Sears Roebuck & Co., 138 N.J. 2, 19, 647 A.2d 454 (1994).
Pursuant to N.J.S.A. 56:8-4, the Attorney General is authorized to promulgate rules and regulations necessary to accomplish the objectives of the Act. In accord with this legislative grant of power, the Division of Consumer Affairs has promulgated administrative regulations giving effect to the Act's provisions. See Daaleman v. Elizabethtown Gas Co., 77 N.J. 267, 270-71, 390 A.2d 566 (1978); N.J.S.A. 56:8-48. In particular, the Department promulgated N.J.A.C. 13:45A-26C.2 to require that an automotive dealer give the customer a written estimate and obtain a written authorization before beginning repairs on an automobile. See also N.J.A.C. 13:21-21.10 (written estimates); N.J.A.C. 13:21-21.11 (authorization for repairs). N.J.A.C. 13:45A-26C.2 reads in pertinent part:
[T]he following acts or omissions shall be deceptive practices in the conduct of the business of an automotive repair dealer, whether such act or omission is done by the automotive repair dealer or by any mechanic, employee, partner, officer of member of the automotive repair dealer:

* * *
2. Commencing work for compensation without securing one of the following:

*1247 i. Specific written authorization from the customer, signed by the customer, which states the nature of the repair requested or problem presented and the odometer reading of the vehicle

* * *
3. Commencing work for compensation without either:
i. One of the following:
(1) Providing the customer with a written estimated price to complete the repair, quoted in terms of a not-to-exceed figure; or
(2) Providing the customer with a written estimated price quoted as a detailed breakdown of parts and labor necessary to complete the repair. If the dealer makes a diagnostic examination, the dealer has the right to furnish such estimate within a reasonable period of time thereafter, and to charge the customer for the cost of diagnosis. Such diagnostic charge must be agreed to in advance by the customer. No cost of diagnosis which would have been incurred in accomplishing the repair shall be billed twice if the customer elects to have the dealer make the repair; or
(3) Providing the customer with a written estimated price to complete a specific repair, for example, "valve job"; or
(4) Obtaining from the customer a written authorization to proceed with repairs not in excess of a specific dollar amount. For the purposes of this subchapter, said dollar amount shall be deemed the estimated price of repairs...

* * *
2. Commencing work for compensation without securing one of the following:
i. Specific written authorization from the customer, signed by the customer, which states the nature of the repair requested or problem presented and the odometer reading of the vehicle

* * *
3. Commencing work for compensation without either:
i. One of the following:
(1) Providing the customer with a written estimated price to complete the repair, quoted in terms of a not-to-exceed figure; or
(2) Providing the customer with a written estimated price quoted as a detailed breakdown of parts and labor necessary to complete the repair. If the dealer makes a diagnostic examination, the dealer has the right to furnish such estimate within a reasonable period of time thereafter, and to charge the customer for the cost of diagnosis. Such diagnostic charge must be agreed to in advance by the customer. No cost of diagnosis which would have been incurred in accomplishing the repair shall be billed twice if the customer elects to have the dealer make the repair; or
(3) Providing the customer with a written estimated price to complete a specific repair, for example, "valve job"; or
(4) Obtaining from the customer a written authorization to proceed with repairs not in excess of a specific dollar amount. For the purposes of this subchapter, said dollar amount shall be deemed the estimated price of repairs...
It is undisputed that plaintiff violated these provisions. That he meant no *1248 harm is irrelevant. "[I]ntent is not an element of [an] unlawful practice ..." Cox v. Sears Roebuck & Co., 138 N.J. at 18, 647 A.2d 454. Even actions taken in good faith may subject the person violating the regulatory provisions to liability for consumer fraud. Gennari v. Weichert Co. Realtors, 148 N.J. 582, 605, 691 A.2d 350 (1997). Thus, while plaintiff's violation of the Act may have been unwitting, it was sufficient to trigger strict liability. Cox v. Sears, Roebuck & Co., 138 N.J. at 18-19, 647 A.2d 454.
Although we have found no reported appellate opinion dealing with the precise issue, the Law Division in Huffmaster v. Robinson, 221 N.J.Super. 315, 534 A.2d 435 (Law Div.1986) has held that a plaintiff who has violated the act may not obtain damages even though his failure to abide by the regulations was innocent, technical and committed in good faith. Id. at 322, 534 A.2d 435. The court said that "[t]he New Jersey act, while silent as to its effect upon the contract, must be read as depriving a technically violating repairman of any enforcement capacity." Ibid.
Several other jurisdictions have precluded an automotive repair facility from recovery under a contract where the repairman has violated the consumer fraud statute's requirement that a written estimate or authorization be obtained. See Donaldson v. Doe, 194 Cal.App.3d 817, 239 Cal.Rptr. 801 (Ct.App.1987) (failure to provide written estimate precludes automotive repair dealer from recovery); Bennett v. Hayes, 53 Cal.App.3d 700, 125 Cal.Rptr. 825 (Ct.App.1975)(same); Schreiber v. Kelsey 62 Cal.App. 3d Supp 45, 133 Cal.Rptr. 508 (1976) (same); Brooks v. R.A. Clark's Garage, Inc., 117 N.H. 770, 378 A.2d 1144 (1977) (failure to provide written estimate precludes recovery and renders repair contract unenforceable); Osteen v. Morris, 481 So.2d 1287, 1289-90 (Fla. 5th DCA 1986) (consumer protection statute a limitation on repair facility's recovery that did not provide written estimate even though it is unfair to the shop); Perez-Priego v. Bayside Carburetor and Ignition Corp., 633 So.2d 1190 (Fla. 5th DCA 1994) (consumer who is not given a written estimate may recover the amount of the repair bill and still retain the benefit of the repairs); Gonzalez v. Tremont Body and Towing, 483 So.2d 503 (Fla. 3rd DCA 1986) (award of damages quantum-meruit to automotive repair facility improper in light of its violation of consumer fraud statute); General Motors Acceptance Corp. v. Chase Collision, 140 Misc.2d 1083, 532 N.Y.S.2d 347 (N.Y.Sct.1988)(auto mechanic not entitled to payment for work done when he failed to comply with invoice requirements).
Other states have found that the automotive facility may still recover under the contract. See Wash. Rev.Code 46.71.070 (providing that automotive repair facility could recover, despite technical violation, if it shows by a "preponderance of the evidence that its conduct was reasonable, necessary, and justified under the circumstances."); Clark v. Luepke, 60 Wash.App. 848, 852, 809 P.2d 752, 754, review granted, 117 Wash.2d 1001, 117 Wash.2d 1002, 812 P.2d 101, affirmed, 118 Wash.2d 577, 826 P.2d 147 (1991) (plain language of consumer fraud statute allows the automobile repairman to charge and collect for work performed and parts supplied, notwithstanding violations of statute); Rogers Refrigeration Co. v. Pulliam's Garage, Inc., 66 Md.App. 675, 505 A.2d 878 (1986) (failure to give customer notice of rights as required by the Automotive Repair Facilities Law was inconsequential and did not excuse payment for auto repairs).
*1249 It is at least arguable that the somewhat mechanical and rigid approach adopted in Huffmaster should not be followed where the consumer has obtained the benefit of his bargain and attempts to use the Act as a sword rather than a shield. Where, for example, there is no dispute as to the work authorized to be done and the agreed upon price, it seems highly unfair to deny the repairman any affirmative right to recover merely because of a technical, inadvertent violation of the Act's prescriptions.
This much conceded, we have no occasion here to address that issue. The overriding fact is that plaintiff's violation of the Act created the climate for the dispute that ultimately developed. In other words, plaintiff's failure to provide a written estimate and obtain a written authorization placed the cost of his services in doubt. Had plaintiff complied with the regulatory provisions, there would have been no viable dispute concerning the amount of remuneration due. We stress that the reasonable value of plaintiff's services was a legitimate issue in the case, and that the amount ultimately awarded by the Law Division was far below that demanded in plaintiff's complaint. Beyond this, we are concerned that the prophylactic value of the Act to deter future violations would be diminished were we to discard Huffmaster's holding in the circumstances presented.
The question then is whether defendant waived the protections afforded by the Act. Waiver involves the intentional relinquishment of a known right and must be evidenced by a clear, unequivocal and decisive act from which an intention to relinquish the right can be based. Country Chevrolet v. North Brunswick Planning Bd., 190 N.J.Super. 376, 380, 463 A.2d 960 (App.Div.1983). "Waiver implies an election by the party to dispense with something of value or to forego some advantage which that party might have demanded and insisted upon." Petrillo v. Bachenberg, 263 N.J.Super. 472, 480, 623 A.2d 272 (App.Div.1993), aff'd, 139 N.J. 472, 655 A.2d 1354 (1995). Moreover, it must be shown that the party charged with the waiver knew of his or her legal rights and deliberately intended to relinquish them. Shebar v. Sanyo Business Sys. Corp., 111 N.J. 276, 291, 544 A.2d 377 (1988). However, "the intention to waive need not be stated expressly but may be spelled out from a state of facts exhibiting full knowledge of the circumstances producing a right and continuing indifference to exercise of that right." Merchants Indem. Corp. v. Eggleston, 68 N.J.Super. 235, 254, 172 A.2d 206 (App.Div.1961), aff'd, 37 N.J. 114, 179 A.2d 505 (1962). Therefore, "waiver `presupposes full knowledge of the right and an intentional surrender'" County of Morris v. Fauver, 153 N.J. 80, 104-05, 707 A.2d 958 (1998) (quoting West Jersey Title & Guar. Co. v. Industrial Trust Co., 27 N.J. 144, 153, 141 A.2d 782 (1958)).
The difficulty with the application of waiver in this case is that the regulations set forth the method for effectuating a waiver. Specifically, N.J.A.C. 13:45A-26C.2.3i(5) states that the customer can only "waive[ ] his right to a written estimate in a written statement, signed by the customer." This is reiterated in the rule's additional requirement that the automotive repair facility conspicuously post a sign directed at the customer which reads: "For your protection, you may waive your right to an estimate only by signing a written waiver." N.J.A.C. 13:45A-26C.2.11. Thus, the regulation contemplates that waiver can only be achieved through a written statement.
*1250 We have also considered whether defendant's conduct can be viewed as so egregious as to estop him from claiming the Act's protection. Estoppel is to be applied "where the interests of justice, morality and common fairness clearly dictate that course." Palatine I v. Planning Bd., 133 N.J. 546, 560, 628 A.2d 321 (1993) (quoting Gruber v. Mayor of Raritan Township, 39 N.J. 1, 13, 186 A.2d 489 (1962)). The doctrine prevents a party from disavowing prior conduct if such repudiation "would not be responsive to the demands of justice and good conscience." Carlsen v. Masters, Mates & Pilots Pension Plan Trust, 80 N.J. 334, 339, 403 A.2d 880 (1979) (citations omitted); O'Malley v. Department of Energy, 212 N.J.Super. 114, 122, 514 A.2d 69 (App.Div.1986), rev'd on other grounds, 109 N.J. 309, 537 A.2d 647 (1987). Essentially, the doctrine "prevent[s] the inequitable assertion or enforcement of claims or rights which might have existed, unless prevented by the estoppel." Davin, L.L.C. v. Daham, 329 N.J.Super. 54, 67, 746 A.2d 1034 (App.Div. 2000); Parkway Ins. Co. v. New Jersey Neck & Back, 330 N.J.Super. 172, 189, 748 A.2d 1221 (Law Div.1988).
Estoppel differs from waiver in that estoppel requires the reliance of another party. Country Chevrolet Inc. v. Township of North Brunswick Planning Board, 190 N.J.Super. 376, 380, 463 A.2d 960 (App.Div.1983). Whereas waiver is a unilateral relinquishment of a right, estoppel is based on the reliance of one individual upon another. Mattia v. Northern Ins. Co. of New York, 35 N.J.Super. 503, 510, 114 A.2d 582 (App.Div.1955). To establish a claim of equitable estoppel:
the claiming party must show that the alleged conduct was done, or representation was made, intentionally or under such circumstances that it was both natural and probable that it would induce action. Further, the conduct must be relied on, and the relying party must act as to change his or her position to his or her detriment.
Miller v. Miller, 97 N.J. 154, 163, 478 A.2d 351 (1984).
Stated simply, "[e]stoppel, as distinguished from waiver, involves conduct which precludes a person from alleging a default in consequence of his own act." Columbia S & L v. Easterlin, 191 N.J.Super. 327, 342, 466 A.2d 968 (Ch.Div.1983), affirmed sub. nom., Columbia S & L v. Bogusz, 198 N.J.Super. 174, 486 A.2d 911 (App.Div. 1985).
We considered the doctrine in D'Egidio Landscaping, Inc. v. Apicella, 337 N.J.Super. 252, 766 A.2d 1164 (App.Div.2001). There, the plaintiff, a landscaper, sued a homeowner for the value of paving his driveway. Id. at 255, 766 A.2d 1164. The landscaper prepared a written estimate for the work and presented a contract to the homeowner before work began. Ibid. The homeowner, refused to sign the contract, claiming that he was insulted because he and the landscaper were lifelong friends. Ibid. As such, the landscaper proceeded to pave the homeowner's driveway, and subsequently a dispute arose as to the amount due for the project. Ibid. The homeowner, who was also involved in the home improvement industry, attempted to avoid payment by invoking a regulation adopted under the Consumer Fraud Act that required all home improvement contracts to be in writing. Ibid.; N.J.A.C. 13:45A-16.2(12).
We held that under the circumstances the homeowner was not entitled to the protection of the Consumer Fraud Act. *1251 Id. at 257, 766 A.2d 1164. We found it unacceptable to permit the homeowner to obtain the benefit of the Act because "the result would be to permit [the homeowner] to retain, at no cost, the fruits of [the landscaper's] labor when [the homeowner] was the one who insisted a written contract was unnecessary...." Ibid. We applied the doctrine of equitable estoppel, holding that the homeowner's conduct induced the landscaper to forgo the requisite contract under the Act. Ibid. Moreover, we concluded that the Act's goal of promoting "truth and fair dealing" in the marketplace would not be served by precluding the landscaper's recovery because of the nature of the homeowner. Id. We explained that "[the homeowner] is ... in the home improvement business himself as a painter and is as chargeable for knowing the applicable regulations as [the landscaper]." Ibid.
The facts here bear some resemblance to those in D'Egidio Landscaping in that defendant was in the business of car repairs and presumably knew of the applicable regulations. However, the defendant's conduct in D'Egidio Landscaping was far more egregious than that of the defendant here. In D'Egidio Landscaping, the defendant actually beseeched the plaintiff to violate the Act's prescriptions. In this case, the record does not suggest that defendant did anything to cause plaintiff to violate the Act. While perhaps defendant's conduct was less than exemplary, we perceive no sound basis to deny him the benefit of the Act's protection.

III.
We agree with the Special Civil Part that defendant did not suffer an ascertainable loss by reason of plaintiff's violation of the Act. However, "an award of... attorneys' fees is mandatory." Cox v. Sears Roebuck & Co., 138 N.J. at 24, 647 A.2d 454. Our Supreme Court has said:
For the sake of completeness we add that a consumer-fraud plaintiff can recover reasonable attorneys' fees ... if that plaintiff can prove that the defendant committed an unlawful practice, even if the victim cannot show any ascertainable loss.... The fundamental remedial purpose of the Act dictates that plaintiffs should be able to pursue consumer-fraud action without experiencing financial hardship.
Id. at 24, 647 A.2d 454.
See also Performance Leasing Corp. v. Irwin Lincoln Mercury, 262 N.J.Super. 23, 619 A.2d 1024 (App.Div.), certif. denied, 133 N.J. 443, 627 A.2d 1148 (1993).
We applied this rule in BJM Insulation & Construction Inc. v. Evans, 287 N.J.Super. 513, 671 A.2d 603 (App.Div.1996) and Branigan v. Level on the Level, 326 N.J.Super. 24, 740 A.2d 643 (App.Div. 1999). Particularly instructive is the language appearing in Branigan, which we quote here:
Although we think the facts now before us demonstrate the lowest conceivable level of violation under the Consumer Fraud Act, and although we have difficulty seeing how the salutary goals of the Act are furthered by the award of fees, the statute nevertheless supports the reward. The Supreme Court has made it clear that the statute mandates an award of counsel fees and costs for any violation of the Act, even if that violation caused no harm to the consumer.
Id. at 31, 740 A.2d 643.
*1252 We thus remand this case to the Special Civil Part for the award of counsel fees in keeping with the decisions we have cited.
Reversed and remanded for further proceedings.
NOTES
[1] For the sake of clarity, we note that the owner of the Hazlet premises was defendant's sister. Thus defendant was presumably permitted access to the facility to retrieve his car.