**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4508-19

ASAP REALTY, INC.,

    Plaintiff-Respondent,

v.

YOSEF BIRNBOIM AND
JUDY BIRNBOIM,

    Defendants-Appellants/
    Third-Party Plaintiffs,

v.

STEVEN A. ZUCKER,

    Third-Party Defendant.

_____

Argued May 18, 2022 – Decided June 20, 2022

Before Judges Gilson, Gooden Brown and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-4365-17.

Abraham Borenstein argued the cause for appellants (Borenstein, McConnell & Calpin, PC, attorneys;

Abraham Borenstein and Bradley M. Arlen, on the briefs).

Andrew R. Turner argued the cause for respondent (Turner Law Firm, LLC, attorneys; Andrew R. Turner, of counsel and on the brief).

PER CURIAM

This appeal arises out of disputes concerning a home-renovation project. The homeowners, Yosef and Judy Birnboim (the Birnboims or defendants), appeal from a March 3, 2020 final judgment that awarded the contractor, ASAP Realty, Inc. (ASAP or plaintiff) $149,378.96 in damages, attorneys' fees, and costs. Following a trial, a jury found that ASAP was owed $77,917.95 for the renovation work done under the contract. The jury also found that ASAP had committed violations of regulations issued under the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -227, but the Birnboims had suffered no ascertainable loss from those violations. The jury, therefore, awarded no damages to the Birnboims.

Following the jury verdict, the trial court awarded ASAP fees and costs of $71,461.01 under Rule 4:58-2 because the Birnboims had rejected an offer of judgment before trial. The court also denied the Birnboims' request for fees and costs under the CFA.

On appeal, the Birnboims argue (1) the damage award to ASAP should be vacated because the jury found that ASAP had violated the CFA; (2) they were entitled to attorneys' fees as a matter of law on their CFA claims; and (3) the fees awarded to ASAP must be vacated because that award was inconsistent with the fee-shifting policy in the CFA. We reject the Birnboims' first and third arguments and affirm the jury's verdict on the breach-of-contract claim in favor of ASAP and the order awarding attorneys' fees to ASAP under the offer-of-judgment rule. We are constrained to reverse the order denying fees to the Birnboims on their CFA claims and remand that issue for a determination of the reasonable amount of fees related to the CFA claims.

I.

To avoid confusion, we initially clarify what constitutes a violation of the CFA, as compared to a failure to comply with CFA regulations. "To prevail on a CFA claim, a plaintiff must establish three elements: '1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss.'" Zaman v. Felton, 219 N.J. 199, 222 (2014) (quoting Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009)). Unlawful conduct generally involves an affirmative act of fraud or a violation of administrative regulations promulgated under the CFA.

A-4508-19

Scibek v. Longette, 339 N.J. Super. 72, 78 (App. Div. 2001). Thus, a failure to comply with CFA regulations may fulfill the first required element of a CFA claim.

The Birnboims contend that ASAP "violated" the CFA when ASAP did not comply with certain CFA regulations. That assertion is inaccurate. A failure to comply with CFA regulations does not mean that ASAP caused any ascertainable loss to the Birnboims. Ascertainable loss is a necessary element to prevail on a CFA claim. Accordingly, we will make that distinction in analyzing the arguments on this appeal.

## II.

We set forth the relevant facts from the record, including the evidence submitted during trial. In November 2012, the Birnboims purchased a home in East Orange for $339,180 (the Home). Four years later, they decided to substantially renovate the Home. In 2016, they entered a contract with ASAP. The contract was dated March 24, 2016 and was signed by the Birnboims on April 15, 2016 (the Contract).

The Contract stated that ASAP would renovate the Home by adding a second floor and roof, as well as increasing the foundation and square footage of the Home as described in "architectural drawings" supplied by an architect

hired by the Birnboims.  The Contract also generally described the work to be done, which included work on the kitchen, bathrooms, windows, siding, plumbing, heating and cooling system (HVAC), electrical system, laundry room, staircase, foyer, doors, porch, deck, basement, driveway, and garage doors.

The Contract provided a breakdown of "estimated costs," which totaled $440,445.  The payments for the work were to be made in seven installments based on the progress of the renovations.  The Contract also stated that the Birnboims could request changes or additional work.  If changes were requested, change orders were to be in writing and signed by the Birnboims and ASAP.  Concerning additional work, the Contract stated:  "Any changes or additions to the scope of work will be invoiced separately and payment will be due upon presentation of invoice."

Renovations on the Home began in May 2016 and were substantially completed by December 2016.  During that time, the Birnboims paid six of the Contract's installment payments totaling $375,065.42.

While the renovations were being done, the Birnboims regularly communicated with the owner of ASAP, Steven Zucker.  Those communications were primarily done via text messages and emails.  As the renovation was progressing, the Birnboims requested additional work.  No written change orders

A-4508-19

were prepared or signed by the Birnboims. Instead, ASAP prepared and submitted seven invoices between July 2016 and December 2016. Each invoice described the additional work done and itemized the cost of the additional materials and labor. The total additional costs itemized in the invoices amounted to $50,835.30. There was also an additional charge of $10,000 for a "hip roof." Before January 2017, the Birnboims did not send any written objection to any of the invoices, nor did they claim that the additional work had not been authorized. They also did not request written change orders or complain about the lack of change orders.

Towards the end of the renovation project, the Birnboims refinanced the Home. In connection with that refinancing, the Home was appraised in December 2016. The day before the appraisal was to be conducted, the Birnboims sent ASAP a text message stating, in part: "the appraiser is coming tomorrow (10 am), so the front landing needs to be done today. If you need to get extra guys or whatever needs to be done to make sure it is complete, please do so." The Home, with its improvements, was appraised at $777,000. In January 2017, the Birnboims obtained a loan for $507,500 and gave the lender a mortgage in that amount on the Home.

A-4508-19

On December 14, 2016, ASAP sent the Birnboims a final statement for all the renovation work. The statement requested a final payment of $92,526.20, consisting of $65,379.58 due on the original contract price; $10,000 for the "hip roof;" $48,135.30 for additional work reflected in six invoices; and $30,988.68 in credits.[1]

On January 22, 2017, Yosef Birnboim sent ASAP an email responding to the final statement. The Birnboims agreed that they owed the final contract installment of $65,379.58, claimed additional credits of $29,545.63, and disputed $30,891.35 of the additional work itemized in the invoices. Accordingly, the Birnboims stated that they owed $32,089.21 of the $92,526.20 ASAP was seeking. Yosef Birnboim also stated:

> Please let me know if you have any questions, we are more than happy to review everything with you. We have a great relationship, and want to make sure that that continues and you are clear & understanding with everything that we put together.
>
> We really appreciated our conversation the other night, that you were willing to go through all of the items with us. We want to continue to work together to resolve everything. [2]

---

[1] The statement listed invoice numbers one and three through seven. Invoice number two requested that payment be submitted directly to another contractor.

[2] After the litigation commenced, Yosef Birnboim submitted a certification describing his January 22, 2017 email as part of ongoing settlement negotiations.

A-4508-19

Thereafter, the parties did not resolve their differences over the final statement. In June 2017, ASAP sued the Birnboims, asserting claims for breach of contract, a book account, and unjust enrichment. ASAP sought damages of $92,526.20, as reflected in its final statement to the Birnboims.

The Birnboims responded by filing an answer, affirmative defenses, counterclaims, and a third-party complaint against Zucker. The counterclaims included allegations that ASAP had violated the CFA and regulations issued under the CFA known as the Home Improvement Practices (HIP) regulations, N.J.A.C. 13:45A-16.1 to -16.2.

Once litigation was joined, the parties engaged in several years of discovery and motion practice. The parties also filed several motions for summary judgment. In March 2018, ASAP filed a motion for partial summary judgement for $32,089.21, the amount the Birnboims had acknowledged they owed ASAP in their January 2017 email to Zucker. The Birnboims opposed that motion. The trial court denied the motion in a May 1, 2018 order.[3]

---

[3] The May 1, 2018 order also dismissed the third-party complaint against Zucker. However, the claims against Zucker were reinstated in a December 18, 2019 order.

A-4508-19

In October 2018, the Birnboims moved for summary judgment on their claims that ASAP and Zucker had failed to comply with the CFA HIP regulations and thereby had "violated the CFA." ASAP opposed that motion. Initially, the trial court granted partial summary judgment to the Birnboims but shortly thereafter vacated that ruling. Specifically, on December 13, 2018, the trial court issued an order finding that ASAP and Zucker had "violated the CFA." On January 3, 2019, however, the trial court issued an amended order that eliminated the finding that ASAP and Zucker had violated the CFA. The court stated that its January 3, 2019 order superseded its December 18, 2018 order.

In February 2019, ASAP served and filed an offer of judgment stating that it would be willing to accept $25,000 in full resolution of the claims in the matter. The Birnboims declined that offer and served and filed their own offer of judgment, offering to accept $45,000 to resolve all the claims.

A jury trial was conducted over ten days in July 2019. Seven witnesses testified: Zucker; the Birnboims; Thomas Tracey, a Township construction official who testified about the issuance of certificates of occupancy for the Home; Ryan Mariman and Gene Metzker, employees of an organization involved in home demolition who testified about salvaging material from the renovation project at the Home; and Donald Fiore, an architect who testified as

an expert about the construction documents concerning the Home's renovation project. The parties also submitted over 170 exhibits into evidence.

After hearing all the evidence, the jury announced its verdict on July 26, 2019. In rendering its verdict, the jury answered a series of questions on a verdict sheet. The jury found that the Birnboims had breached their contract with ASAP and that ASAP was entitled to $77,917.95 for the work under the original contract and the additional work. The jury also found that ASAP had not complied with the CFA's HIP regulations by failing to (1) have change orders agreed to in writing; (2) construct the improvements consistent with industry standards; (3) deliver an HVAC system as called for in the Contract; (4) provide the quality of workmanship called for in the Contract; and (5) fix items on a punch list given to ASAP by the Birnboims. After answering those questions, the jury went on to find that the Birnboims had not suffered any damages resulting from that conduct. In addition, the jury found that Zucker had not violated the CFA or its regulations and returned no causes on all claims asserted against Zucker in his individual capacity.

On August 12, 2019, the trial court filed an order of judgment, which (1) entered a judgment in favor of ASAP for $77,917.95, plus costs; (2) acknowledged that ASAP had "violated" the CFA, but the jury had also

determined that the Birnboims had suffered no damages as a result; and (3) dismissed with prejudice the counterclaims and third-party complaint.

In August 2019, ASAP filed a motion to amend the final judgment to include an award of attorneys' fees under the offer-of-judgment rule. Shortly thereafter, the Birnboims moved to vacate the order of judgment and compel a new trial or, in the alternative, to amend the final judgment. The Birnboims also sought an award of attorneys' fees in their favor. After hearing arguments on those motions, the trial court (1) denied the Birnboims' motion for a new trial and attorneys' fees; and (2) granted ASAP's motion for attorneys' fees in accordance with the offer-of-judgment rule. The court explained the reasons for those decisions on the record on November 15, 2019.

In granting attorneys' fees to ASAP, the trial court allowed it to file a supplemental certification and allowed the Birnboims to respond. On March 3, 2021, the trial court analyzed ASAP's fee request and defendants' opposition on the record. The court then issued a final judgment awarding ASAP a total judgment of $149,378.96, consisting of $77,917.95 in damages, $64,840 for attorneys' fees, and $6,621.01 for costs. The judgment also stated that interest would accrue on that amount in accordance with Rule 4:58 until the judgment was satisfied. The Birnboims now appeal from that final judgment.

A-4508-19

On appeal, the Birnboims make three arguments, contending (1) because ASAP was found to have violated the CFA, it cannot recover contract damages; (2) the trial court erred in not awarding them attorneys' fees on their CFA claim; and (3) public policy requires that the award of attorneys' fees to ASAP be vacated because the jury found ASAP violated the CFA. These are legal issues, and we review them de novo as questions of law. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

The Birnboims are not challenging the sufficiency of the evidence supporting the jury verdict. Instead, they argue that, as a matter of law, a contractor who violates regulations under the CFA or commits an unlawful act under the CFA cannot recover damages. Moreover, the Birnboims are not challenging the attorneys' fees award on the basis that the time spent or hourly rates were unreasonable. Instead, they argue that, as a matter of law, if a contractor violates a CFA regulation or commits an unlawful action under the CFA, the contractor cannot recover attorneys' fees and the homeowner is required to be awarded fees. Considering the evidence presented at trial, the jury verdict, and the governing law, we (1) affirm the jury's breach-of-contract award to ASAP; (2) reverse and remand the issue of an award of attorneys' fees

to the Birnboims related to their CFA claims; and (3) affirm the award of attorneys' fees to ASAP under the offer-of-judgment rule.

1.    The CFA.

We begin with an overview of the CFA to put the Birnboims' arguments in context.  The CFA was enacted to protect consumers against loss resulting from fraud by persons engaged in the sale of goods and services.  <u>Scibek</u>, 339 N.J. Super. at 77.  It is to be applied broadly given the statute's remedial purpose and is to be liberally construed in favor of consumers.  <u>Lettenmaier v. Lube Connection, Inc.</u>, 162 N.J. 134, 139 (1999); <u>Scibek</u>, 339 N.J. Super. at 78.  One of the principal aims of the CFA is to promote "truth and fair dealing in the market place."  <u>Feinberg v. Red Bank Volvo, Inc.</u>, 331 N.J. Super. 506, 512 (App. Div. 2000).

As already noted, to "prevail on a CFA claim, a plaintiff must establish three elements: '1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss.'"  <u>Zaman</u>, 219 N.J. at 222 (quoting <u>Bosland</u>, 197 N.J. at 557).  An unlawful practice includes a violation of administrative regulations promulgated under the CFA.  <u>Scibek</u>, 339 N.J. Super. at 78.

13 <span style="float:right;">A-4508-19</span>

The CFA authorizes the Attorney General to promulgate rules and regulations, a violation of which "gives rise to a discrete category of CFA violations." Perez v. Professionally Green, LLC, 215 N.J. 388, 400 (2013); see also N.J.S.A. 56:8-4; Cox v. Sears Roebuck & Co., 138 N.J. 2, 17 (1994). Violations of the HIP regulations are deemed to be violations of the CFA. Allen v. V & A Bros., Inc., 208 N.J. 114, 129 (2011). The CFA regulations governing home-improvement contractors require that all changes in the terms and conditions of a home-improvement contract be in writing, which must be "signed by all parties." N.J.A.C. 13:45A-16.2(a)(12).

2.     The Damage Award to ASAP.

Generally, a contractor who "substantially perform[s]" the contract is entitled "to recover the contract price less . . . a fair allowance to the owner to make good the defects." R. Krevolin & Co. v. Brown, 20 N.J. Super. 85, 89 (App. Div. 1952) (quoting Reese v. Kline Bldg. & Constr. Co., 8 N.J. Misc. 296, 297 (1930)); see also Power-Matics, Inc. v. Ligotti, 79 N.J. Super. 294, 303 (App. Div. 1963). "Substantial performance is compliance in good faith with all important particulars of the contract." Jardine Ests., Inc. v. Donna Brook Corp., 42 N.J. Super. 332, 337 (App. Div. 1956).

A jury verdict, including an award of damages, is "cloaked with a 'presumption of correctness.'" Cuevas v. Wentworth Grp., 226 N.J. 480, 501 (2016) (quoting Baxter v. Fairmont Food Co., 74 N.J. 588, 598 (1977)). "The presumption of correctness that attaches to a damages award is not overcome unless a defendant can establish, 'clearly and convincingly,' that the award is 'a miscarriage of justice.'" Ibid. (first quoting Baxter, 74 N.J. at 596; and then quoting R. 4:49-1(a)).

The jury verdict on ASAP's contract claim was clear: the Birnboims breached the contract and owed ASAP $77,917.95. The Birnboims argue that the verdict in favor of ASAP should be vacated because the jury also found that ASAP had violated the CFA. We reject that argument as applied to the facts of this case.

There are factual circumstances where a technical violation of the CFA, even without proof of ascertainable loss, can preclude recovery by a merchant or contractor. See Scibek, 339 N.J. Super. at 85. In Scibek, we held that a car dealer was not entitled to be paid for car repairs it had performed because the dealer violated regulations under the CFA. Id. at 82, 85. Significantly, however, we explained that the car dealer's "violation of the [CFA] created the climate for the dispute that ultimately developed . . . [because] failure to provide a written

15

estimate and obtain a written authorization placed the cost of [the car dealer's] services in doubt." Id. at 82.

Moreover, we rejected a "mechanical and rigid" rule precluding a contractor from any recovery due to a technical CFA violation. Ibid. Accordingly, we explained it would be inappropriate to preclude a recovery

> where the consumer has obtained the benefit of his bargain and attempts to use the [CFA] as a sword rather than a shield. Where, for example, there is no dispute as to the work authorized to be done and the agreed upon price, it seems highly unfair to deny the repairman any affirmative right to recover merely because of a technical, inadvertent violation of the Act's prescriptions.

> [Ibid.]

There was no argument, and no basis in the record to argue, that ASAP's original contract with the Birnboims was inconsistent with the CFA. Instead, one of the principal arguments at trial was that the additional work was not memorialized in written, signed change orders. In response to several questions on the verdict sheet, the jury stated that ASAP violated the CFA and its regulations. The jury also clearly found, however, that the Birnboims suffered no damages resulting from ASAP's violations. Given that verdict, there is nothing inconsistent with the jury awarding ASAP contract damages and,

16

separately, finding that ASAP had technically violated the CFA, but those violations resulted in no damages.

ASAP had affirmative claims based both on breach of contract and unjust enrichment. The Birnboims asserted the CFA violations as an affirmative defense. The jury clearly rejected that affirmative defense when it found that the Birnboims had breached the contract and awarded ASAP damages.

3.      The Birnboims' Claim for Attorneys' Fees.

We generally review an award of attorneys' fees under an abuse of discretion standard. Garmeaux v. DNV Concepts, Inc., 448 N.J. Super. 148, 155 (App. Div. 2016). "Where such fees are authorized[,] the decision to award or deny attorney's fees rests within the sound discretion of the trial court." Desai v. Bd. of Adjustment of Town of Phillipsburg, 360 N.J. Super. 586, 598 (App. Div. 2003). "However, where the issue is whether a rule of law precludes an award of fees, our review is de novo." Van Horn v. Van Horn, 415 N.J. Super. 398, 409 (App. Div. 2010) (citing Manalapan Realty, 140 N.J. at 378).

Moreover, whether the Birnboims can recover attorneys' fees under N.J.S.A 56:8-19 involves the application of established facts to that statute. See Perez, 215 N.J. at 398-99. Accordingly, it is a mixed question of law and established facts that we, as an appellate court, review de novo. Ibid.

17

The CFA authorizes an award of attorneys' fees to a claimant who "suffers any ascertainable loss of moneys or property, real or personal," caused by an "act" or "practice" prohibited by the CFA. N.J.S.A. 56:8-19; see also Perez, 215 N.J. at 391. When a claimant proves an ascertainable loss, the CFA mandates an award of attorneys' fees because it states, "the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit." N.J.S.A. 56:8-19; see also Cox, 138 N.J. at 24.

When a private claimant proves an unlawful act under the CFA, but no ascertainable loss, an award of attorneys' fees depends on whether there was a bona fide claim of an ascertainable loss. See Perez, 215 N.J. at 403; Weinberg v. Sprint Corp., 173 N.J. 233, 253 (2002); see also Cox, 138 N.J. at 24-25. Our Supreme Court has explained that "a consumer-fraud plaintiff can recover reasonable attorneys' fees, filing fees, and costs if that plaintiff can prove that the defendant committed an unlawful practice, even if the victim cannot show any ascertainable loss and thus cannot recover treble damages." Cox, 138 N.J. at 24.

To be entitled to attorneys' fees, the party must plead a claim of ascertainable loss that can survive a motion for summary judgment, directed verdict, or involuntary dismissal. Perez, 215 N.J. at 403-04; Pron v. Carlton

Pools, Inc., 373 N.J. Super. 103, 113 (App. Div. 2004). In that regard, the Court has explained:

> [A claimant] with a bona fide claim of ascertainable loss that raises a genuine issue of fact requiring resolution by the factfinder would be entitled to seek also injunctive relief when appropriate, and to receive an award of attorneys' fees, even if the plaintiff ultimately loses on his [or her] damage claim but does prove an unlawful practice under the [CFA]. The [CFA]'s remedial purposes are promoted thereby and the Legislature's requirement of ascertainable loss for a private cause of action is respected.
>
> [Weinberg, 173 N.J. at 253.]

If the issue of ascertainable loss is dismissed before it gets to the factfinder, the CFA claimant is not entitled to attorneys' fees. See Perez, 215 N.J. at 405, 408 (affirming denial of attorneys' fees based on an involuntary dismissal of the CFA claim because no prima facie showing was made on the issue of ascertainable loss); Weinberg, 173 N.J. at 240 (affirming denial of attorneys' fees when the issue of ascertainable loss was dismissed on summary judgment). If, however, the issue of ascertainable loss is presented to the jury, but the jury finds no ascertainable loss, a claimant is entitled to an award of attorneys' fees. See Scibek, 339 N.J. Super. at 86; Branigan v. Level on the Level, Inc., 326 N.J. Super. 24, 31 (App. Div. 1999); BJM Insulation & Constr., Inc. v. Evans, 287 N.J. Super. 513, 517-18 (App. Div. 1996). In that latter

19

situation, the award of attorneys' fees is mandatory.  See Cox, 138 N.J. at 24; Scibek, 339 N.J. Super. at 86.

Because the issue of ascertainable loss was presented to the jury, the Birnboims are entitled to some award of attorneys' fees even though the jury also determined that they had suffered no ascertainable loss.  The amount of those fees, however, rests with the discretion of the trial court.  Branigan, 326 N.J. Super. at 31.  An award of fees under N.J.S.A. 56:8-19, just like any fee award, is "guided by those principles that run consistently through our caselaw when courts address the appropriate quantum of fees allowable pursuant to various fee-shifting statutes."  Ibid.  "Thus, along with other factors, [the court] must look at the level of success achieved in the litigation."  Ibid.  See also Rendine v. Pantzer, 141 N.J. 292, 334-35 (1995); JHC Indus. Servs., LLC v. Centurion Cos., Inc., 469 N.J. Super. 306, 316 (App. Div. 2021) (setting forth the factors to be considered in awarding attorneys' fees).  Consequently, the Birnboims are entitled to attorneys' fees incurred in proving the violations of the CFA regulations; they are not entitled to fees for defending the contract claim because the jury rejected their defenses on that claim.  We, therefore, remand the issue of the Birnboims' request for fees and costs related only to their CFA claims.

A-4508-19

4.      The Fee Award to ASAP.

The trial court awarded fees and costs to ASAP under the offer-of-judgment rule.  R. 4:58. The trial court also rejected the Birnboims' argument that a fee award was inconsistent with the jury's finding that ASAP had violated the CFA.

"The offer-of-judgment rule permits a party to offer to take a monetary judgment or to allow judgment to be taken against it for a sum certain."  Best v. C&M Door Controls, Inc., 200 N.J. 348, 356 (2009) (citing R. 4:58-3).  "The fundamental purpose of the rule is to induce settlement by discouraging the rejection of reasonable offers of compromise."  Ibid.  "That goal is achieved through the imposition of financial consequences (the award of fees and costs) where a settlement offer turns out to be more favorable than the ultimate judgment."  Ibid. (citing Firefreeze Worldwide Inc. v. Brennan & Assocs., 347 N.J. Super. 435, 441 (App. Div. 2002)).

Rule 4:58-1(a) and (b) provide generally for the making and accepting of an offer of judgment.  Rule 4:58-2 sets forth the consequences of the non-acceptance of an offer by a claimant and Rule 4:58-3 sets forth the consequences of the non-acceptance of an offer from a party who is not a claimant.  Rule 4:58-2(a) explains that if the offer is not accepted and the party making the offer

21

obtains a money judgment in an amount that is 120% or more of the offer, "excluding allowable prejudgment interest and counsel fees," the offeror shall be allowed reasonable attorneys' fees.

Rule 4:58-3(c) goes on to state:

> No allowances shall be granted if (1) the claimant's claim is dismissed, (2) a no-cause verdict is returned, (3) only nominal damages are awarded, (4) a fee allowance would conflict with the policies underlying a fee-shifting statute or rule of court, or (5) an allowance would impose undue hardship.

In construing Rule 4:58-3(c), our Supreme Court has held that an employer cannot recover counsel fees under the offer-of-judgment rule in a case involving claims under the Conscientious Employee Protection Act, N.J.S.A. 34:19-1 to -14, and the Prevailing Wage Act, N.J.S.A. 34:11-56.25 to -56.47. Best, 200 N.J. at 352, 354. The Court explained that because neither statute allowed an employer to recover counsel fees, awarding the employer a fee under the offer-of-judgment rule would be contrary to the policies underlying those statutes and was, therefore, precluded by Rule 4:58-3(c). Id. at 358-60.

We do not read Best as establishing a mechanical rule that requires the denial of fees under the offer-of-judgment rule when there is another fee-shifting statute involved. Instead, the question is whether an award of fees would conflict with the fee-shifting statute. As already discussed, the CFA allows an

22

award of attorneys' fees to a consumer in certain circumstances. ASAP was awarded attorneys' fees in connection with an offer of judgment on its affirmative claims for a recovery under the Contract. Accordingly, Rule 4:58-2 controls.

The jury award was greater than 120% of the $25,000 offer of judgment made by ASAP before trial. To the extent that the Birnboims relied on CFA violations as an affirmative defense, the jury rejected that defense. It was only in the context of considering the Birnboims' affirmative claims under the CFA that the jury found technical CFA violations but no ascertainable loss. Given that verdict, we discern no conflict with the policies underlying the CFA's fee-shifting provision in allowing ASAP a fee on its prevailing contract claim.

In short, the holding in Best is not applicable to the facts of this case where ASAP prevailed on its contract claims and recovered fees under those claims. The jury awarded the Birnboims no recovery under their CFA claim. Consequently, the award of fees under the offer-of-judgment rule in this case does not conflict with nor is it contrary to the policies underlying the CFA. Accordingly, we find no legal error or abuse of discretion in the trial court's decision to grant ASAP a reasonable fee award.

A-4508-19

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4508-19