**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1258-23

JAMES A. ZALESKI,

     Plaintiff-Appellant,

v.

MICHAEL L. BONO,
individually and t/a
BONO MOTORS, LLC,

     Defendant-Respondent.

_____

Submitted March 5, 2025 – Decided June 9, 2025

Before Judges Rose and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Docket No. DC-000848-23.

James A. Zaleski, appellant pro se.

Barry W. Rosenberg, attorney for respondent.

PER CURIAM

Following a bench trial, plaintiff James A. Zaleski appeals from the October 25, 2023 order dismissing his complaint against defendant Michael L. Bono, individually and t/a Bono Motors, LLC, and the December 12, 2023 order denying reconsideration. We affirm.

In March 2023, plaintiff filed a Special Civil Part complaint against defendants, alleging breach of an oral contract and violations of the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -227, and the CFA's implementing regulations for auto repair shops, N.J.A.C. 13:45A-26C.2. Defendant filed an answer and counterclaim alleging quantum meruit or unjust enrichment, which was dismissed on summary judgment pretrial. After a one-day bench trial, the judge dismissed plaintiff's complaint, finding he failed to meet his burden to prove breach of contract or establish an ascertainable loss to sustain a CFA claim.

The facts adduced at trial were largely undisputed. Plaintiff owned a music store where defendant was a customer. In conversation, defendant said he specialized in Porsche engine repair, to which plaintiff responded his 1998 Porsche Boxster was overheating. The parties ultimately came to an oral agreement for defendant to replace the head gaskets on the vehicle for $4,000 plus two guitars from plaintiff's store.

2

The parties did not specifically discuss how the work was to be done, but given the car's "substantial age" they agreed defendant would use replacement parts from a used engine. In June 2022, defendant completed the repairs and delivered the vehicle to plaintiff. Two days later, plaintiff returned it to defendant because the check engine light came on.

Defendant determined the engine had a "cylinder six misfire" and performed "substantial work" over the next month, replacing the engine with a different used engine. He also replaced the gauges on the dash and several sensors in the car, and delivered the vehicle to plaintiff.

The next week, plaintiff contacted defendant and told him the vehicle was overheating. Defendant's employees picked up the car and, although it was difficult to start, they were able to load it on a trailer. When they tried to start the car again at defendant's shop, the engine seized. Defendant examined the engine and observed coolant had overflowed into the engine compartment, trunk area and outside the vehicle, which caused him to believe plaintiff had not properly attended to the overheating. Defendant later notified plaintiff the fabric convertible top tore when the vehicle was put into service mode.

After considering the testimony of the parties and their witnesses, the judge issued an oral decision, opining:

Overall, I would have to assess the testimony of [defendant] as credible. . . . [Defendant] ultimately felt that the first occasion he fixed this car was a cylinder six misfire. He indicated in his testimony that could be attributed to many different causes, quote, I think he said, many. I believe that the word, many, was inclusive of other than coexisting engine problems such as a cracked block. But he said it was often a crack. But there could be other causes. And that's why he installed a refurbished head that was his idea at that point. And that's when [plaintiff]'s original engine went to the side.

They never did discuss what engine would be used. There was no restriction. He was the specialist. He was retained to use his judgment. That's what [plaintiff] was paying for . . . . [H]e was paying for a specialist here. He was giving up two guitars and he was paying $4,000, and I think that he expected [defendant] to use his judgment. And [defendant] did. He put what he felt was necessary into the car, replacing the original engine and also replacing the cluster of gauges. The odometer, the temperature, and the other gauge.

. . . .

So, the car was up and running as was agreed it appears to the court. That is unchallenged. I listened to the testimony here of [plaintiff] carefully. There's no challenge to the car being working and operable for him these two days. Is [defendant] supposed to supply some implied warning of an additional period of time for this car that was twenty-two, twenty-three, twenty-four years old at that point? He didn't give any, that's for sure. Defendant did not extend any type of guarantee orally and the parties did go through quite an oral arrangement here.

4

A-1258-23

. . . .

I cannot find, as the defendant asserts, that the plaintiff is the one who overheated the car and cause[d] the engine to get locked up. But by the same token, I cannot find that the plaintiff is correct that the defendant is the one who overheated the car and the engine got locked up. There's not enough evidence of anyone having done that . . . . I cannot find that either of you did it. . . . But it's the burden of the plaintiff to prove that the contract was breached. . . .

. . . .

So, I can't determine who caused the car to overheat. It's not before me. I don't have enough information about that. Was it [plaintiff]? I don't know that it was . . . [plaintiff]. I don't know that. And I don't know that it was [defendant], though.

The judge also found plaintiff did not prove a cause of action as to the torn roof, again noting the age of the car:

So the canvas roof, how long does it last? I don't know how long it lasts. I don't have any testimony in front of me it should last for twenty years. This is—does it defy common sense? It probably does. I wouldn't expect a canvas roof to last twenty years. I don't know that it's reasonable for anybody to think that. I don't know when it went on precisely. . . . But can the mechanic who is trying to work on the engine who has to lower the roof as he may deem it's necessary to do so that he can have the access to the vehicle or otherwise. And it has damage to the convertible top. Is that reasonable to assume that . . . the car that has been in the elements for twenty-five years would not have damage and that if it

5

does have damage, it must be [defendant's] fault and I get a new roof.

As to plaintiff's CFA claim, the judge found:

> I do fault [defendant] for not following the law. He should have written this contract up. He should have complied with the terms of the law and what he should know is his obligation as an auto repairman to provide [a] written estimate. But . . . the parties exercised their own agreement here. And I'm trying to determine whether a contract was breached[] . . . because without the contract being breached, I cannot find an ascertainable loss which is necessary for the Consumer Fraud award. I cannot find it. What I do note is I agree that there were violations. But was there the ascertainable loss, . . . as a result of those violations. . . . [A]t this point, I do not have that evidence that there was an ascertainable loss.

The judge also denied plaintiff's subsequent motion for reconsideration. In a written decision, the judge noted plaintiff's motion did not offer "any new legal issues, nor [did] it offer any factual determinations or legal rulings that were made in error during trial," but rather was "a resuscitation of the same arguments heard at trial."

On appeal, plaintiff argues the trial judge: 1) was biased, prejudiced, and prejudged the case; 2) erred by not qualifying plaintiff's expert at trial and instead acted as an expert witness; 3) incorrectly ruled in favor of defendant at trial; and 4) erred by denying plaintiff's reconsideration motion.

6

Addressing plaintiff's contentions in turn, we first consider whether the trial judge demonstrated bias or prejudice. Plaintiff argues the judge made disparaging remarks, mischaracterized a prior judge's order, told the parties that going to trial was improvident, and demonstrated bias because he participated in settlement negotiations with the parties prior to trial.

A judge must disqualify him or herself if the judge has "given an opinion upon a matter in question in the action," or "there is any other reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so." R. 1:12-1(d), (g). "A movant [seeking to disqualify a judge] need not show actual prejudice; 'potential bias' will suffice." Goldfarb v. Solimine, 460 N.J. Super. 22, 31 (App. Div. 2019) (quoting State v. Marshall, 148 N.J. 89, 276 (1997)).

A court has a duty to sit that is as strong as the duty to disqualify itself. Ibid. (stating "judges are not free to err on the side of caution" by granting recusal motions); Hundred E. Credit Corp. v. Eric Schuster Corp., 212 N.J. Super. 350, 358 (App. Div. 1986) ("It is not only unnecessary for a judge to withdraw from a case upon a mere suggestion that he is disqualified: it is improper for him to do so unless the alleged cause of recusal is known by him to exist or is shown to be true in fact.").

7

"A judicial statement of opinion in the course of the proceeding in the case . . . or in another case in which the same issue is presented [does] not require disqualification." State v. Medina, 349 N.J. Super. 108, 129 (App. Div. 2002) (alteration in original) (quoting Marshall, 148 N.J. at 278). "A judge [may] continue to participate in a case when [an] opinion which he has rendered . . . was expressed in the course of [the] proceedings regarding the same controversy." Ibid. (alterations in original) (quoting Matthews v. Deane, 196 N.J. Super. 441, 444 (Ch. Div. 1984), appeal dismissed, 206 N.J. Super. 608 (App. Div. 1986)).

Here, we are unpersuaded the judge's comments, including his discussion of the prior order and advisement of a judge's duty to report intentional underreporting or evasion of income or sales tax,[1] were inappropriate or demonstrated bias. As to the judge's attempts to facilitate settlement, both parties requested and knowingly waived any objection to proceeding in that manner. Plaintiff's newly-minted arguments that he was pro se and did not understand the consequences are unavailing. Tuckey v. Harleysville Ins. Co., 236 N.J. Super. 221, 224 (App. Div. 1989) ("Litigants are free to represent

---

[1] See Sheridan v. Sheridan, 247 N.J. Super. 552, 566 (Ch. Div. 1990) (holding "where evidence establishes an intentional, underreporting of income . . . it is a judge's duty to report such wrongdoing to the appropriate authorities").

themselves if they so choose, but in exercising that choice they must understand that they are required to follow accepted rules of procedure promulgated by the Supreme Court to guarantee an orderly process."). And notwithstanding plaintiff's waiver, nothing in the record indicates the judge decided the merits of the case on anything other than the evidence adduced during trial.

We next address plaintiff's contention the judge erred by not qualifying his expert at trial and instead acted as an expert witness. "The admission or exclusion of expert testimony is committed to the sound discretion of the trial court." Townsend v. Pierre, 221 N.J. 36, 52 (2015). "[W]e apply [a] deferential approach to a trial court's decision to admit expert testimony, reviewing it against an abuse of discretion standard." Id. at 53 (second alteration in original) (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371-72 (2011)).

"An abuse of discretion 'arises when a decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis."'" Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

9

Expert testimony is governed by N.J.R.E. 702: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise."

"[A]n expert [offered as a witness] 'must "be suitably qualified and possessed of sufficient specialized knowledge to be able to express [an expert opinion] and to explain the basis of that opinion."'" Agha v. Feiner, 198 N.J. 50, 62 (2009) (third alteration in original) (quoting State v. Moore, 122 N.J. 420, 458-59 (1991)).

Here, the judge denied plaintiff's request to introduce expert testimony from Peter DeGeorge:

> Expert testimony has been ruled required when a consumer brings an action against an automobile repair shop alleging both improper repair work and a failure to perform work. What the competent expert evidence must prove is what the defendant supposedly did wrong or did not do that is required in order for the ascertainable loss to be demonstrated. . . . There's no written report from which the defendant would have had some prior notice as well. There's no demonstration that there is peculiar knowledge possessed by the expert who is proffered in the area of Porsche, or for that matter engine repair, specifically of Porsche. These are foreign cars that require some specialty apparently. . . .

A-1258-23

I cannot find that someone who has not looked at the car would fundamentally be able to make a competent opinion without having examined the car. That would be improper. . . .

In addressing plaintiff's motion for reconsideration, the judge further explained his decision:

Plaintiff proffered a friend and music customer as an expert, . . . De[G]eorge, who was unable to testify as he had not inspected the car and had not worked on Porsches for many years, if ever. . . . De[G]eorge testified he had run Meineke auto repair centers extensively and set up many centers. He then left that type of work and became a high-end auto salesman for a time but more recently sells motor homes. His principal credential was being [Automotive Service Excellence] certified in 1980 . . . . He could not specifically identify repairing a Porsche but was "sure" he had done so. He admitted not having worked on any in the last ten years and also never having replaced a Porsche engine. He could not recall the last time he had worked on a Porsche and admitted he <u>never</u> <u>inspected</u> the [p]laintiff's car or photographed it. His only source of information was [p]laintiff and he had not reviewed pictures. He had never been qualified as an expert by any court and could only identify the generic Chilton's manual as a reference source without any specific Porsche sources. He had not rendered a written report. This [c]ourt held that De[G]eorge could not testify as an expert as a proper foundation had not been met for his opinion. . . .

We discern no abuse of discretion in the judge's preclusion of DeGeorge's proffered expert testimony. DeGeorge did not have expertise in Porsche repair,

11

had never repaired a Boxster, and did not examine plaintiff's vehicle. Thus, he was not qualified to render an expert opinion on the repair of plaintiff's vehicle.

We next address plaintiff's contention the trial judge erred in dismissing his complaint after trial. Plaintiff argues there were only four issues of genuine material fact: whether defendant could prove the vehicle was damaged by plaintiff's own misuse; whether plaintiff could prove an ascertainable loss; whether there was proof the primary motivation for proceeding with oral agreements was to avoid sales, use, and income tax; and whether plaintiff waived defendant's CFA obligations.

"Final determinations made by the trial court in a non-jury case are subject to a limited and well-established scope of review." D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013) (quoting Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011)). Appellate courts "give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions." Allstate Ins. Co. v. Northfield Med. Ctr., P.C., 228 N.J. 596, 619 (2017) (quoting Griepenberg v. Twp. of Ocean, 220 N.J. 239, 254 (2015)). "Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Cesare v. Cesare, 154 N.J. 394, 412 (1998) (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)).

A-1258-23

"That is so because an appellate court's review of a cold record is no substitute for the trial court's opportunity to hear and see the witnesses who testified on the stand." Balducci v. Cige, 240 N.J. 574, 595 (2020).

Accordingly, "findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare, 154 N.J. at 411-12 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). An appellate court "may not overturn the trial court's fact findings unless [it concludes] that those findings are 'manifestly unsupported' by the 'reasonably credible evidence' in the record." Balducci, 240 N.J. at 595 (quoting Seidman, 205 N.J. at 169).

"A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). Whether a cause of action satisfies the CFA is a question of law we review de novo. See All the Way Towing, LLC v. Bucks Cnty. Int'l, Inc., 236 N.J. 431, 440-41 (2019) (holding legal determinations regarding the applicability, validity, or interpretation of laws, statutes, or rules are reviewed de novo).

To establish a cause of action for breach of contract, the plaintiff must show: 1) the parties entered into a contract containing certain terms; 2) the

13

plaintiff did what the contract required him to do; 3) the defendant did not do what the contract required them to do; and 4) the defendant's breach, or failure to do what the contract required, caused a loss to the plaintiff. Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016) (quoting Model Jury Charges (Civil), 4.10A "The Contract Claim-Generally" (May 1998)).

Contrary to plaintiff's contention, it was his burden to prove a cause of action, not defendant's burden to prove plaintiff was responsible for the car's engine seizing. The trial court found that plaintiff had not met his burden in establishing defendant breached the oral agreement to fix the car. Defendant attempted to fix the car by utilizing a rebuilt engine, but when that seized he installed a different used engine in an effort to keep costs to a minimum. While plaintiff argued he never agreed to defendant's installing a different used engine, the trial judge found defendant's testimony more credible and consistent with the vehicle's age and approximate $6,000 value. Thus, the judge found defendant's installation of a used engine did not constitute a breach of the agreement. The judge further found defendant delivered to plaintiff an operable Porsche and plaintiff failed to prove the seizing was caused by defendant. Because the judge's reasoning was grounded in the record, we discern no abuse of discretion in his findings.

A-1258-23

Turning to plaintiff's CFA claim, the CFA "was enacted to 'protect the consumer against imposition and loss as a result of fraud and fraudulent practices by persons engaged in the sale of goods and services.'" Scibek v. Longette, 339 N.J. Super. 72, 77 (2001) (quoting Fenwick v. Kay Am. Jeep, Inc., 136 N.J. Super. 114, 117 (1975)).

A violation of the CFA occurs when a person commits an "unlawful practice," as defined by the legislation. Cox ex rel. Est. of Cox v. Sears Roebuck & Co., 138 N.J. 2, 17 (1994). "Unlawful practices fall into three general categories: affirmative acts, knowing omissions, and regulation violations." Ibid. The first two categories are found in N.J.S.A. 56:8-2 (unlawful conduct), and the third is found under N.J.S.A. 56:8-4 (violates state or federal law). Ibid.

The CFA allows a private cause of action where a plaintiff can establish: "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009).

An "ascertainable loss" requires that the "plaintiff must suffer a definite, certain and measurable loss, rather than one that is merely theoretical." Id. at 558. "In cases involving breach of contract . . . , either out-of-pocket loss or a demonstration of loss in value will suffice to meet the ascertainable loss hurdle

and will set the stage for establishing the measure of damages." Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 248 (2005).

Regulations promulgated under the CFA specify certain "deceptive practices" by automotive repair dealers. N.J.A.C. 13:45A-26C.2(a); Scibek, 339 N.J. Super. at 78-79. A violation of these regulations constitutes a violation of the CFA. Sprenger v. Trout, 375 N.J. Super. 120, 131 (App. Div. 2005).

We agree with the trial judge's determination plaintiff failed to establish a CFA claim because there was no ascertainable loss. Plaintiff did not suffer any damages for breach of contract and therefore could not show his losses were "definite, certain and measurable." Bosland, 197 N.J. at 558. The judge rejected plaintiff's claims that defendant deceived him by installing a used engine. And even if defendant violated regulations governing auto repair shops, N.J.A.C. 13:45A-26C.2, plaintiff's failure to demonstrate an ascertainable loss was nevertheless fatal to his CFA claim.

Because we find no error in the trial judge's decision, we discern no abuse of discretion in his denial of plaintiff's reconsideration motion, which echoed his trial arguments. See Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (citing Kornbleuth v. Westover, 241 N.J. 289, 301 (2020)).

To the extent we have not expressly addressed any remaining issues raised by plaintiff, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division